will hear argument first in Hernandez v. Garland, No. 19, 2044, 21-6533. Good morning, Your Honors. Maria Da Silva, Pro Bono Counsel for Petitioner Oscar Hernandez. I would like to reserve three minutes. May it please the Court. At the heart of this case is an established rule of appellate jurisprudence, the clear error rule, which demands proper deference to the factual findings and especially the credibility determinations of the triers of fact. Incorporated into the regulations governing the BIA, this rule establishes the primacy of the immigration judge as the fact finder. In this case, after carefully considering the record, including the documentary evidence submitted and the live testimony of Mr. Hernandez and his eldest daughter, who the IJ found credible without reservation, the IJ concluded that the positive equities outweigh the negative factors in Mr. Hernandez's case and granted cancellation of removal. On appeal, the Board agreed Mr. Hernandez's family would suffer exceptional and extremely unusual hardship if he were deported, but concluded they would have to because Mr. Hernandez did not merit a favorable exercise of discretion. I would agree that the BIA is entitled to weigh that issue of hardship versus whatever is on the other side of the scale, right? It's their job to re-weigh that evidence. They may re-weigh the- All they can do, you argue, is find new facts. Correct. And they did not dispute the evidence of hardship. What they did, supposedly, was to re-weigh the factors, the equities, including Mr. Hernandez's criminal history and other positive equities that the immigration judge noted. However, in re-weighing what they called factors, the BIA actually revisited underlying facts. In fact, they found that Mr. Hernandez exhibited violent conduct. And if you look at the factual findings of the IJ, it wouldn't be there, right? Correct. And the BIA cited to Exhibit 10, Pages 1 to 2, which lay out the dismissed charges that the IJ found Mr. Hernandez credibly refuted. Correct. Go on. This is actually very similar to the situation the Tenth Circuit examined last December in Villegas-Castro. And I'm speaking now about the government's claim that the BIA was just re-weighing the evidence and not making a credibility determination or engaging in factual findings. In Villegas-Castro, the government argued that in reversing the IJ's finding that Petitioner's conviction was not for a particularly serious crime, the BIA did not reach an adverse credibility determination contradicting the IJ's. But rather, the BIA simply didn't find Petitioner's testimony that the underlying sexual encounter was consensual to be as probative or persuasive as the contradictory police report. The Tenth Circuit rejected the government's attempt to characterize that as re-weighing factors de novo, explaining that the government's characterization still falls within the domain of credibility, which refers to an evaluation of someone's believability. And here, the BIA specifically stated that although the IJ accepted Mr. Hernandez's explanation of the circumstances surrounding the 2016 incident, the BIA, quote, did not find his explanation convincing. Are they allowed to re-weigh the issue of credibility? Is the BIA allowed to do that? It is a factual finding, Your Honor. And they may only re-weigh facts and credibility determinations under the clear error standard, which they did not apply here. Because of the word convincing? Because the BIA said it didn't find it convincing? Is that kind of your argument here? That they reversed the IJ's credibility determination? Yes. They said, we do not find Mr. Hernandez's explanation of the circumstances convincing. Why does that- Isn't that in comparison as part of the weighing process? It's not convincing when measured against the alleged violent conduct or the conduct of the petitioner? Whether it's violent or not, I don't know. That is a revisiting of the underlying facts, which the BIA may do, but has to apply the clear error standard to the IJ's determination. Why does that have to be so? I mean, if I say I don't find your argument convincing, that could mean that I don't find you credible. But it could also mean that the government's offered persuasive reasons that as I weigh, you know, your argument is less convincing. Convincing goes to believability, and when you're talking about finding facts, the IJ is the individual who does that in the first instance by looking at all the underlying evidence, including the police report, including Mrs. Hernandez's affidavit, including Mr. Hernandez's testimony. The quote-unquote, you know, weighing of that underlying evidence is only within the purview of the IJ. Counsel, do you have a citation either to the statute or to a case that stands for the proposition that you just stated, that the BIA is not permitted to revisit the factual findings except for clear error? Yes. In Wu Lin versus Lynch, which was cited in the briefs, under the clearly erroneous standard, the issue for the BIA is not whether the petitioner is telling the truth. That is an issue for the IJ of fact. The issue for the BIA was whether it had sufficient justification for ruling that the IJ had clearly erred in finding the petitioner truthful. There was also a reconsideration order here, right? Correct. The BIA said that it was weighing the equities against the negative factors, and the awkwardness here, it seems like your argument is that we would have to find that the BIA was in fact not doing what it said it was doing. What do we do with that? Again, actually, Wu Lin, which is 813 F3D 122, that's a decision from 2016 of this court, notes that the court does not merely rely on the board's invocation of the correct legal standard, but rather examines what the board actually did. Another case in which the BIA cited the proper legal standard at the outset. So it doesn't matter that the BIA said, no, that's actually not what we were doing. It was a re-weighing, not fact-finding. It's this court's obligation to look at what the BIA actually did and see if the BIA actually did what it said it did. So even if that means that we would have to find that the BIA mischaracterized what it said it was doing, its own description of what it was doing. Numerous courts have so found, Your Honor. Any questions? No. Okay. Thank you, counsel. You've reserved three minutes for a vote. Thank you. We'll hear from the government. Good morning. Good morning. Is that better? May it please the court. My name is Alana Yoon. I'm here on behalf of the Attorney General. This is a case of limited jurisdiction. The board reversed the IJ's grant of cancellation of removal because upon de novo review and relying on the IJ's factual finding, it concluded that Mr. Hernandez did not establish that he warranted a favorable exercise of discretion. Do you agree with opposing counsel that the standard for reversing a factual finding is clear error? Yes. Even under de novo review? Yes, Your Honor. According to the regulations, the board, when reviewing the IJ's factual finding, has to apply a clear error standard of review. And the standard is that the finding by the IJ is plausibly supported by the record, even if the board would have weighed the evidence differently. Plausibility is one way. In a matter of RSH, the board said that it would reverse an IJ's factual finding only if it was left with a definite and firm conviction that the record shows otherwise. Could you point to anywhere in the board's decision where it found that the immigration judge's factual findings were clearly erroneous? It didn't, Your Honor. It did not? It did not. They say they're doing one thing, but they may have done something else. Your Honor, the board did not reverse any of the IJ's factual findings. Well, they had to, didn't they? No, they didn't. They had to reverse the finding of whether he was violent or not. No, Your Honor. What they did here was they re-weighed the evidence. I think are we having angels dancing on the head of a pin? What is the difference when I say they found he was violent when the IJ found he wasn't, and you say they didn't reverse any of their findings? Your Honor, the board, when it was making its discretionary determination, it was looking at all the factors that the IJ found and that Mr. Hernandez had admitted. It wasn't just violent conduct. It was he had six criminal convictions, two of which occurred after he did display violent conduct towards his spouse. There was two orders of protection imposed. But his wife wound up testifying in his behalf at the hearing. That was said it was a matter of jealousy, and they were having a domestic dispute. Also, in summarizing the 2016 incident, the IJ wrote he testified that he did not throw his cell phone, that he did throw his cell phone, but it did not hit her. However, the board adds the word at. It stated that Mr. Hernandez admitted on course examination that he threw the phone at his wife. I don't think he did. Your Honor, the board- That's a little not playing fair with the record. Your Honor, Mrs. Hernandez did not testify at the hearing. It was his eldest daughter with his previous spouse. She submitted a letter, yes, indeed, saying- I accept that amendment. And, Your Honor, Mr. Hernandez's testimony was he threw a phone- And then the board changed them to he threw a phone at her. His testimony was he threw a phone. It didn't think she didn't catch it. It didn't touch her. The board made a reasonable inference to fill in that gap. But that's not the crux of the board's decision. But the IJ did not make that inference and found him nonviolent. So the board ignored that finding of fact by the IJ. Your Honor, the IJ did not say that Mr. Hernandez was not violent. Did they find him nonviolent? Isn't that what the IJ said? The IJ credited Mr. Hernandez's testimony. The IJ made an overall credibility determination. But credibility, as the Supreme Court has said in Ming Dai, credibility does not mean truthfulness or believability. There's also persuasiveness and sufficient to meet the burden of proof. And that is where the board, it zoomed out and looked at the equities and saw not just, it looked at his overall criminal history, what the IJ had found, which was he did have six criminal convictions, two of which were against his spouse. They did result in protective order. He did admit that there were arguments against his wife. He did admit that he threw a cell phone. He did admit that he did plead guilty to and was convicted of disorderly conduct. There was other testimony here that he beat his wife at one time. Are we talking about a girlfriend too and then a wife? Or are we talking about all of this directed at the same person? I can explain. So there was a 2009 incident against his first spouse, and that was when there was an argument. He picked a belt from near a couch and he whipped her, and that resulted in assault in the third degree that changed to reckless assault. And he whipped her with a belt? Yes. That was a order of protection was also entered. And then for the disorderly conduct conviction, the police report has two incidences listed. We have an April 2006 incident where they did engage in an argument, and that is where we have the information about him pushing her to the ground, him kicking her, him attempting to strangle her. So that preceded the first, the other one? That preceded, yes. That was in 2016. Oh, 16. 2016, yes, Your Honor. I thought you said 2006. Oh, sorry. And then we have October 2016, which is where Mrs. Hernandez, April, excuse me, April 2016 was also Mrs. Hernandez. October 2016 was with Mrs. Hernandez where they were engaged in an argument. He threw a phone. After, as the BIA says. He threw the phone and he said. Well, you were at a BIA at an act. Well, are we going to quibble over whether she caught it or didn't catch it? If it was in her, excepting his version of it, I mean, his version of it wasn't that he threw it against the wall or out the window or somewhere else. If he was throwing it, isn't it logical that he was throwing it at her, whether or not it hit her, whether or not she caught it, whatever. And that's all the BIA said, right? That's the crux of the BIA's point on that. But counsel. In other words, it could have been in her direction. It could have been in her direction. Could have said that. His testimony was he threw the phone, but she didn't. It didn't. She didn't even catch the phone or touch the phone. So that implies that she didn't catch it. She didn't even catch it, even though it was thrown at her. I mean, if it was thrown against the opposite wall, there wouldn't have been. She didn't even catch it. Yes, Your Honor. I'd like the court to look at the entirety of the board's discretionary determination, and it was weighing of the evidence that the immigration judge provided. But, counsel. Yes, Your Honor. How is stating that Mr. Hernandez never hurt her by Mrs. Hernandez in her submission to the court, isn't that equivalent to fully recanting what she told the police? No, Your Honor. Tell me why not. No, Your Honor, because that doesn't. She didn't deny that the incident did not happen. She didn't deny that he didn't. She said he never hurt her. That's the language of her statement. And he testified that he threw a phone. And he testified that they argued. And the board was properly within its discretion to reweigh those two fact findings by the IJ. And that's what it did. It gave more weight to Mr. Hernandez's admission that there was an incident they argued. And he threw a phone. And he pled guilty to and was convicted of disorderly conduct. And a protective order was issued against him. So the IJ was not particularly troubled by this incident as they describe it. And then the BIA turns it into a violent confrontation. How is that not rejecting the IJ's factual determinations? But, Your Honor, the IJ did not make an explicit finding that. No, but he granted him the relief he sought. And that was after weighing of the evidence. And the IJ is permitted to weigh his evidence with his own discretion. And the board on appeal was able to. The board is entitled to reweigh. What they're not entitled to do is make new factual findings as to Mr. Hernandez's capacity for violence. That they're not permitted to do. And that's what they did here. Your Honor, the board focused on the overall determination of Mr. Hernandez's conviction. You don't think we should be picking out, cherry picking one incident, the phone incident. Because there were really three incidents. Yes. Correct? Yes. I mean, there's a kicking of and there's a whipping of the wife. Then there's kicking the wife or beating her. And then there's the phone incident. Yes. And then he. If you take his version of the phone incident and the other two together, you're saying that what the BIA did was weigh that evidence. Take it in the light most favorable to him and say that's violent conduct. They also added in his other criminal conviction. And his other criminal. And his other criminal conviction as well, Your Honor. And what were those, remind me? He has. The two had to do with the protective order. Those are the 2016 incidents? The 2016 incident was the disorderly conduct that resulted in the protective order. And then he had an arrest for another conviction for disorderly conduct when he engaged in an argument with a stranger at a supermarket. Then he had other arrests, three other arrests and convictions for driving with a suspended license. And. Before you finish, can I ask you a question? If we agree with you that this was a reweighing of evidence, that's an exercise of discretion over which we don't have jurisdiction. So wouldn't the proper result be dismissal of the petition as opposed to denial of the merits? Not only if we don't have jurisdiction. Yes, Your Honor. We don't have jurisdiction. You don't have jurisdiction. Dismissed. Yes, that is true, Your Honor. Okay. That is true. You didn't ask for that. Unless the court has any other questions, we rest on our brief. Thank you. Thank you, Counselor. Ms. DeSilva, you have three minutes remaining. Thank you. First of all, I just want to clarify the criminal record and the criminal history. There was a 2009 incident which Mr. Hernandez does not dispute. In fact, he turned himself in to the police after that incident and went through extensive rehabilitation. There was only one 2016 incident. So are you saying that the 2009 incident doesn't count? No, not that it doesn't count, but that that was not what the BIA hinged its decision on, which was that Mr. Hernandez continued to exhibit violent and abusive conduct. And the continued rests on the conduct in 2016. There were two alleged incidents in the police report, the latter of which involved the phone. Mr. Hernandez credibly refuted the first incident that was in the police report. And the second incident regarding the phone, I have to note that Mr. Hernandez was testifying through a translator and that if the issue really boils down to whether or not he threw his phone in frustration or he threw his phone towards his wife or he threw his phone at his wife, that is a factual finding that the BIA cannot simply fill in the gaps for. And that the BIA must remand to the IJ for consideration of that issue. So his claim is that he was throwing the phone in frustration. Does that mean he was motivated by frustration? There was a picture on, we are now wading into the land of speculation and fact finding, which we probably shouldn't do, but there was a picture on the phone which started the argument. Right. Counsel, you just talked about a remand. What relief are you requesting from us today? I would request that you remand to the BIA with instructions to apply the proper standard. And that is the clear error standard to the IJ's credibility determination and findings of fact to articulate if they are overturning the IJ's credibility determination. And if the BIA feels there are factual findings that are necessary for it to reach its discretionary decision, to remand to the IJ for those factual findings. Isn't that what you asked the BIA to do on the reconsideration motion? Yes, and the BIA simply doubled down. It incorporated by reference its 2019 decision and said we are just reweighing the evidence de novo. With respect to the credibility determination, they put their response to our argument that they rejected the IJ's credibility determination in a footnote. It didn't even merit above the line and simply reiterated the same two arguments, two of the same arguments that they stated in their first decision, which is that we don't believe Mr. Hernandez because he admitted he threw his phone at his wife, incorrect, and he pled guilty to disorderly conduct. We would request that this court look beyond the board's euphemistic reweighing in its discretion language and require the board to live up to its regulations, which is applying the clear error standard. Thank you, Your Honors. Thank you both. I'll take the case under review.